**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **VALICOR ENVIRONMENTAL SERVICES, LLC**<br><br>         **Plaintiff,**<br><br>**v.**<br><br>**BRENT WHEELER**<br>**3260 Domain Street**<br>**St. Charles, MO 66301**<br><br>**STEVANIE WHEELER**<br>**3260 Domain Street**<br>**St. Charles, MO 66301**<br><br>**and**<br><br>**SIMPLIFIED E. SOLUTIONS, LLC,**<br>**a Missouri Corporation**<br><br>**Serve:  Chad M. DeGraffenreid**<br>         **3213 Meeker Street**<br>         **St. Charles, MO 63301**<br><br>         **Defendants.** | **Civil Action No.  4:19-CV-2302** |

## COMPLAINT FOR INJUNCTIVE RELIEF
## AND DAMAGES FOR BREACH OF CONTRACT

Plaintiff Valicor Environmental Services, LLC ("Valicor"), through undersigned counsel, files this Complaint against Defendants Brent Wheeler, Stevanie Wheeler, and Simplified E. Solutions, LLC (jointly "Defendants"), seeking injunctive relief and damages to be proven at trial related to conduct in violation of Mr. Wheeler's April 2, 2014 Non-Compete and Confidentiality Agreement.  In support of this Complaint, Valicor states as follows:

## NATURE OF THE ACTION

1.     This is an action by Valicor to secure damages and injunctive relief against its former employee, Brent Wheeler ("Mr. Wheeler"), his wife Stevanie Wheeler ("Mrs. Wheeler"), and Simplified E. Solutions, LLC ("SES") for their collective efforts to misappropriate Valicor's confidential information and to solicit Valicor's former and current clients in violation of the Agreement.  Defendants used Valicor's client and vendor relationships without investing in and expending the resources and efforts necessary to build such a business themselves.

2.     Mr. Wheeler breached and continues to breach his enforceable contractual obligations owed to Valicor.  Upon information and belief, prior to his departure from Valicor, he and his wife started SES to directly compete with Valicor.  Since his departure, he has impermissibly solicited Valicor's customers on behalf of SES.  The material breaches of the Agreement have caused Valicor to suffer damages including loss of customers, substantial loss of business profits, and harm to goodwill.  Valicor prays for damages and injunctive relief as set forth below and for such other and further relief as the court may deem appropriate.

## PARTIES

3.     Valicor is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 11807 Reading Road, Cincinnati, Ohio.  Valicor is duly licensed to do business in the State of Missouri.  Valicor is a national provider of non-hazardous wastewater treatment services.  Valicor's business includes centralized waste treatment, product destruction and repurposing, and retail oil services, among other offerings.

4.     Mr. Wheeler is a former employee of Valicor.  Upon information and belief, he resides at 3260 Domain Street, St. Charles, Missouri.  Mr. Wheeler held the positions of General Manager and Client Sales Representative while employed at Valicor.  Upon information and belief,

Mr. Wheeler has been employed by the Economy Boat Store since March 2019. Upon further information and belief, Mr. Wheeler, while employed at Valicor and continuing to the present, performed acts on behalf of SES and Mrs. Wheeler in breach of his legal and contractual duties to Valicor.

5.    Upon information and belief, SES is a limited liability company organized under the laws of the State of Missouri, with its principal place of business located at 3213 Meeker Street, St. Charles, Missouri. Upon information and belief, SES is a direct competitor of Valicor.

6.    Upon information and belief, Mrs. Wheeler is Mr. Wheeler's wife and an individual residing at 3260 Domain Street, St. Charles, Missouri. Mrs. Wheeler is an employee of SES.

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.    In addition, jurisdiction is proper independently pursuant to 28 U.S.C. § 1331 because Valicor asserts a claim arising under the laws of the United States; specifically, the Defend Trade Secrets Act, 18 U.S.C. § 1836.

10.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants are residents of the State of Missouri, live in this District, and a substantial part of the events giving rise to these claims also occurred in this District.

## STATEMENT OF FACTS

11.    Valicor is a national provider of non-hazardous wastewater treatment services. Leveraging an extensive fleet of tankers and a network of wastewater treatment facilities, Valicor transports and processes diverse wastewater streams that result from industrial and consumer

goods manufacturing. Valicor's business includes centralized waste treatment, product destruction and repurposing, and retail oil services, among other offerings.

12.     In April 2014, Mr. Wheeler began his employment with Valicor as the General Manager for Valicor's regional facility near St. Louis, Missouri. He later became the Customer Sales Representative for all sales originating from that facility.

13.     As Customer Sales Representative, Mr. Wheeler was the outward-facing company representative that communicated directly with Valicor's customers. Valicor trusted Mr. Wheeler with a wide array of Valicor's confidential information, including, without limitation, trade secrets, customer lists, marketing procedures, billing procedures, and other information regarding customer and potential customer relationships and/or arrangements.

14.     In August 2018, Mr. Wheeler signed a Separation Agreement with Valicor. In the Separation Agreement, Mr. Wheeler fully acknowledged that:

> This Agreement supersedes and cancels all prior offers, promises and agreements and resolves any and all outstanding disputes, with **the exception of your previously executed Noncompetition Agreement, which remains in full force and effect, and is attached for your reference**.

A true and correct copy of the Separation Agreement is attached as **Exhibit A**.

### Mr. Wheeler's Non-Solicitation and Confidentiality Contractual Obligations

15.     On April 2, 2014, Mr. Wheeler entered into a Non-Compete and Confidentiality Agreement ("the Agreement") with Valicor. Valicor asked Mr. Wheeler to enter into the Agreement to protect Valicor's legitimate business interests because of (1) the highly competitive nature of Valicor's businesses; (2) Mr. Wheeler's access to confidential information about Valicor's business and about Valicor's customers; and (3) the need to protect Valicor's legitimate

competitive business interests and confidential information. A true and correct copy of the Agreement is attached as **Exhibit B**.

16. Pursuant to the Agreement, Mr. Wheeler agreed that during his employment with Valicor and for a period of 18 months following the termination of his employment, not to compete with Valicor including, without limitation by either (1) soliciting Valicor's "past, present, or potential customers or clients" or (2) engaging or participating in business substantially similar to or competitive with the business activities of Valicor. The Agreement states:

> 2. You agree that during the term of your employment with the Company and for a period of eighteen (18) months following the termination of Your employment by You or the Company for any reason, You **shall not** directly or indirectly (whether as an employee, sole proprietor, partner, venture, stockholder, director, office, consultant, agent or in any other capacity):
>
> (a) Engage or participate in business substantially similar to or competitive with the business activities in which the Company engages during the term of Your employment, including but not limited to the following areas: Algae oil harvesting and extraction; alternative fuels (including ethanol) purification and oil extraction; waste or environmental management and/or hauling; and industrial fluid purification and/or management. This restriction shall be limited to any state of the United States or Mexico and any providence [sic] of Canada in which the Company conducts business during the course of Your employment.
>
> (b) Solicit, attempt to solicit, or assist another to solicit, any of the Company's past, present, or potential customers or clients, or in any other way influence the company's customers, clients, vendors or suppliers to terminate or alter their business relationship with the Company.
>
> (**Exhibit B**, Para. 2).

17. Pursuant to the Agreement, Mr. Wheeler also agreed that Valicor possessed confidential information that he agreed to protect from disclosure:

5

You acknowledge and agree that all Confidential Information (defined below) is the exclusive and confidential property of the Company and You shall not disclose any Confidential Information, during or at any time after Your employment with the Company, to any person or entity outside the Company without the written consent of the Company, except as may be ordered by a court of law.

You agree "Confidential Information" includes, but is not limited to, information, which would qualify as a Trade Secret. "Confidential Information" means information which: (a) is proprietary to, about or created by the Company; (b) gives the Company some competitive business advantage, or the opportunity of obtaining such an advantage; or (c) would be, if disclosed, detrimental to the interest of the Company.

Such Confidential Information includes for example, but is not limited to (whether or not reduced to writing or designated as confidential): engineering information and data; product, tooling or equipment designs; development plans; price and cost data; licenses; patents; information related to patent applications; customer/client lists and information, vendor and supplier information; content of contracts; new applications; hardware and apparatus; processes and methods; formulae; computer programs and techniques; inventions; technological development; "know-how" machine specifications; and purchasing, accounting, financial, personnel, merchandising and licensing information. …You agree that upon termination of Your employment for any reason, or when otherwise requested by the Company, You shall return all documents, computer data and other sources of Confidential Information to the Company.

(**Exhibit B**, Para. 3).

18.    Pursuant to the Agreement, Mr. Wheeler must not disclose confidential information to others unless written consent is obtained from Valicor.  Valicor has not provided such consent nor has Mr. Wheeler requested such consent from Valicor.

19.    Pursuant to the Agreement, the legal and equitable covenants and obligations imposed on Mr. Wheeler by the Agreement applied equally to Mrs. Wheeler and was/is binding

6

upon her:

> You further agree and understand that this Agreement is for the benefit of the Company, and its successors and assigns, and is binding upon You and Your spouse, children heirs, representatives, executors, administrators, agents, successors, and assigns.

> (**Exhibit B**, Para. 7).

20. Pursuant to the Agreement, Mr. Wheeler agreed that the Agreement "shall be construed in accordance with and governed for all purposes by the laws of the State of Michigan without regard to conflicts of laws principles." (*Id.*).

21. In exchange for the legal and equitable covenants and obligations imposed on Mr. Wheeler by the Agreement, Valicor provided Mr. Wheeler with access to confidential business information, continued employment, and compensation/benefits.

## Mr. Wheeler/Mrs. Wheeler/SES Solicit Valicor's Client Reckitt Benckiser and Other Clients

22. Prior to January 1, 2018, Valicor maintained an exclusive services contract with Reckitt Benckiser ("RB") for RB's waste management and processing services. Pursuant to that contract, Valicor received approximately $20,000.00 per month.

23. In January 2018, while Mr. Wheeler was still a Valicor employee, RB informed Valicor that RB wanted to terminate this services contract with Valicor. RB provided Valicor with written notice of its services contract termination effective January 5, 2018. RB remains an active client of Valicor's for other contracts and services.

24. Shortly after Mr. Wheeler ceased working at Valicor, Valicor learned that Mr. Wheeler, on behalf of SES, approached RB to provide the same services that Valicor previously provided to RB. Valicor performed this work for RB during the time that Mr. Wheeler was the

Valicor Customer Sales Representative.

25.     Mr. Wheeler's solicitation of RB, a Valicor customer, on behalf of SES was a breach of Paragraph 2, Subsection (a) of the Agreement, given that SES was engaging in "a business substantially similar to or competitive with the business activities in which [Valicor] engages during the term of [Mr. Wheeler's] employment." (**Exhibit B**, Para. 2).

26.     Since the formation of SES, Mr. Wheeler directly or indirectly was employed and/or acted as an agent or representative of SES.  On information and belief, Mr. and Mrs. Wheeler control SES and directly benefit from its competitive business.

27.     In early 2019, Valicor learned that SES was performing the same work for RB that Valicor had previously performed.

28.     In February 2019, Valicor learned from a third-party commercial trucking company, which was transporting wastewater totes from RB, that Mr. Wheeler, on behalf of SES, was managing the loads from RB.

29.     Mr. and/or Mrs. Wheeler, on behalf of SES, directly solicited RB, which constitutes a breach of Paragraph 2 Subsection (b) of the Agreement.  Valicor is not yet aware of when this solicitation started or specifically occurred, but based on the timeline of events, has reason to believe that this solicitation may have started while Mr. Wheeler was still a Valicor employee.

30.     Based on information and belief, a substantial amount of SES's business derives from its work from RB, which only was possible through Mr. Wheeler's material breach of the Agreement.

32.     Earlier in 2019, Valicor received information from another current customer, a large supplier of private brand products (hand soaps and sanitizers), that Mr. Wheeler recently

approached it offering for SES to handle its recyclables business, which Valicor was performing.

33.     Mr. Wheeler has breached the non-solicitation provisions in the Agreement and misappropriated Valicor's confidential information to solicit and secure business for SES to their benefit.

### Valicor Notified Mr. Wheeler of His Legal Obligations to No Avail

34.     On February 18, 2019, Valicor, through undersigned counsel, sent a cease and desist letter to Mr. Wheeler, demanding that he abide by his contractual obligations and those owed to Valicor under statutory and common law, cease and desist his activities with SES or any similar activity, and cease and desist from soliciting and/or contracting with Valicor's clients. A true and correct copy of the February 18, 2019 cease and desist letter is attached as **Exhibit C**.

35.     On May 9, 2019, following an interim exchange of phone calls, Mr. Wheeler asserted that no breach of the Agreement hard occurred, and Valicor consequently sent correspondence to Mr. Wheeler's counsel demanding additional information to support Mr. Wheeler's contention. A true and correct copy of the May 9, 2019 correspondence is attached as **Exhibit D**.

36.     On June 11, 2019, following an additional exchange of phone calls, Mr. Wheeler's counsel provided a one-page response to several questions posed by Valicor's counsel related to Mr. Wheeler's and SES's activities and Mr. Wheeler's post-termination employment. The parties again exchanged information the week of August 1.

37.     As of the date of this filing, the Defendants, collectively and individually, have successfully and unlawfully interfered with Valicor's business relationships with former/current clients, and have been consequently competing unlawfully, constituting a loss to Valicor in an

amount to be proven at trial.

## COUNT I
## BREACH OF NON-COMPETE AGREEMENT
### (Defendant Mr. Wheeler)

38.     Valicor adopts and herein incorporates by reference the allegations set forth in

paragraph 1 through 37 as fully set herein.

39.     The Agreement is a valid and enforceable agreement executed by Mr. Wheeler.

40.     Valicor performed its obligations under the Agreement.

41.     Mr. Wheeler breached Paragraph 2 Subsections (a) and (b) of the Agreement by (1)

directing and aiding SES in competition with Valicor; (2) soliciting RB, a Valicor client, on behalf

of SES; (3) securing RB's business on behalf of SES; and (4) soliciting a large supplier of private

brand products (hand soaps and sanitizers), a Valicor customer, for SES to handle its recyclables

business.

42.     Mr. Wheeler also breached Paragraph 3 of the Agreement by engaging in the

unauthorized use, disclosure, and misappropriation of Valicor's confidential and proprietary

information.

43.     As a direct and proximate result of Mr. Wheeler's breaches, Valicor has suffered

and will continue to suffer general and special damages, including the loss of clients, reputation,

and goodwill.  Valicor seeks compensation for all damages and losses proximately caused by the

breaches and wrongful conduct of Mr. Wheeler in an amount to be proven at trial.  Further, Valicor

seeks an injunction restraining Mr. and Mrs. Wheeler and those acting in concert with them as

prayed below.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(Defendant Mr. Wheeler)**

44.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 43 as fully set herein.

45.     Mr. Wheeler assumed a position of trust and confidence in his duties as General Manager and Customer Sales Representative for the St. Louis, Missouri region.

46.     By virtue of his key senior leadership position with Valicor, Mr. Wheeler had a fiduciary duty of loyalty to Valicor.

47.     Mr. Wheeler, while employed at Valicor and thereafter, owed Valicor a fiduciary duty of loyalty to work in the best interests of Valicor and not to engage in competitive activities harmful to Valicor.

48.     Mr. Wheeler, while employed at Valicor and in breach of his fiduciary obligations, upon information and belief, secretly planned and solicited RB to transfer part of the work Valicor performed for RB to SES.

49.     Mr. Wheeler, while employed at Valicor and in breach of his fiduciary obligations, upon information and belief, directly solicited RB, a past and current client of Valicor, to move its business to SES, a direct competitor of Valicor.

50.     As a direct and proximate result of Mr. Wheeler's breach of his fiduciary obligations, Valicor has suffered and will continue to suffer general and special damages, including the loss of clients, reputation, and goodwill.  Valicor seeks compensation for all damages, including punitive damages, and losses proximately caused by the breaches and wrongful conduct of Mr. Wheeler in an amount to be proven at trial.  Further, Valicor seeks an injunction restraining

Mr. Wheeler and those acting in concert with him as prayed below.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Defendant Mrs. Wheeler)

51.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 50 as fully set herein.

52.     Valicor has a contractual relationship with Mr. Wheeler, its former employee, who agreed to abstain from competing (directly or indirectly) with Valicor and from misusing Valicor's confidential information.

53.     Valicor derives future economic benefits from its contractual relationships with its current and former employees, specifically in protecting the disclosure of its confidential information and/or trade secrets.

54.     Mrs. Wheeler had knowledge of the terms and conditions of the Agreement at the time that Mr. Wheeler was working on behalf of SES in negotiating with RB.

55.     Mrs. Wheeler, without justification, intentionally and improperly induced Mr. Wheeler to breach his Agreement.

56.     As a result of Mrs. Wheeler's willful misconduct, Valicor suffered damages including loss of customer(s), substantial loss of business profits and hardship to good will.

57.     As a direct and proximate result of Mrs. Wheeler's acts of interference, the contractual relationships between Valicor and its clients solicited by SES and/or any of its agents, including Mr. Wheeler, were disrupted, and Valicor will continue to suffer general and special damages, including the loss of clients, reputation, and goodwill.  Valicor seeks compensation for all damages, including punitive damages, and losses proximately caused by the acts of interference

and wrongful conduct of Mrs. Wheeler and any of her agents, in an amount to be proven at trial. Further, Valicor seeks an injunction restraining Mrs. Wheeler and those acting in concert with her as prayed below.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Defendant Simplified E. Solutions, LLC)

58.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 57 as fully set herein.

59.     Valicor has a contractual relationship with Mr. Wheeler, its former employee, who agreed to abstain from competing (directly or indirectly) with Valicor and from misusing Valicor's confidential information.

60.     Valicor derives future economic benefits from its contractual relationships with its current and former employees, specifically in protecting the disclosure of its confidential information and/or trade secrets.

61.     SES had knowledge of the terms and conditions of the Agreement at the time that Mr. Wheeler was working on behalf of SES to secure the business of RB and other Valicor current and former customers.

62.     SES intentionally and improperly induced Mr. Wheeler to breach his Agreement.

63.     As a result of SES's willful misconduct, Valicor suffered damages including loss of customer(s), substantial loss of business profits and hardship to good will.

64.     As a direct and proximate result of SES's acts of interference, the contractual relationships between Valicor and its clients solicited by SES and/or any of its agents, including Mr. Wheeler, were disrupted, and Valicor will continue to suffer general and special damages,

including the loss of clients, reputation, and goodwill.   Valicor seeks compensation for all

damages, including punitive damages, and losses proximately caused by the acts of interference

and wrongful conduct of SES and any of its agents, in an amount to be proven at trial.   Further,

Valicor seeks an injunction restraining SES and those acting in concert with it as prayed below.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (All Defendants)

65.     Valicor adopts and herein incorporates by reference the allegations set forth in

paragraph 1 through 64 as fully set herein.

66.     Valicor had a contractual relationship with RB for waste or environmental

management and/or industrial fluid purification.

67.     Valicor derived economic benefits from its contractual relationship with RB.

68.     Defendants had knowledge of the terms and conditions of the agreement with RB

at the time that Mr. Wheeler was working on behalf of SES in negotiating with RB.

69.     Defendants, without justification, intentionally and improperly induced RB to

terminate its agreement with Valicor, and upon information and belief, have attempted to induce

other customers to transfer their business from Valicor to SES.

70.     As a result of Defendants' willful misconduct, Valicor suffered damages including

loss of customer(s), substantial loss of business profits and hardship to good will.

71.     As a direct and proximate result of Defendants' acts of interference, the contractual

relationships between Valicor and its clients solicited by SES and/or any of its agents, including

Mr. Wheeler, were disrupted, and Valicor will continue to suffer general and special damages,

including the loss of clients, reputation, and goodwill.   Valicor seeks compensation for all

damages, including punitive damages, and losses proximately caused by the acts of interference and wrongful conduct of Defendants, in an amount to be proven at trial. Further, Valicor seeks an injunction restraining Valicor and those acting in concert with them as prayed below.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCIES
### (All Defendants)

72.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 71 as fully set herein.

73.     Valicor had a valid business expectancy to provide RB with waste or environmental management and/or industrial fluid purification services.

74.     Defendants had knowledge of the terms and conditions of the agreement with RB at the time that Mr. Wheeler was working on behalf of SES in negotiating with RB.

75.     Defendants, without justification, intentionally and improperly induced RB to terminate its relationship with Valicor.

76.     As a result of Defendants' misconduct, Valicor suffered damages including loss of customer(s), substantial loss of business profits and hardship to good will.

77.     As a direct and proximate result of Defendants' willful acts of interference, the contractual relationships between Valicor and its clients solicited by SES and/or any of its agents, including Mr. Wheeler, were disrupted, and Valicor will continue to suffer general and special damages, including the loss of clients, reputation, and goodwill. Valicor seeks compensation for all damages, including punitive damages, and losses proximately caused by the acts of interference and wrongful conduct of Defendants, in an amount to be proven at trial. Further, Valicor seeks an injunction restraining Defendants and those acting in concert with them as prayed below.

## COUNT VII
## <u>MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION</u>
### (All Defendants)

78.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 77 as fully set herein.

79.     As an employee for Valicor, Mr. Wheeler had access to and possessed Valicor's confidential customer information, including the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the customer's specific needs.

80.     The confidential information gave Valicor an opportunity to obtain an advantage over its competitors.

81.     The confidential information is now known to Valicor's competitors or others outside Valicor's own business, including SES and Mrs. Wheeler.

82.     Mr. Wheeler acquired such trade secrets and confidential information in confidence, and Valicor took reasonable steps to safeguard its confidential information, which included executing non-compete and confidentiality agreements with its current and former employees.

83.     Mr. and Mrs. Wheeler, beginning while Mr. Wheeler remained a Valicor employee, misappropriated Valicor's confidential information by disclosing it to third parties without Valicor's consent and using it solely for their benefit and the benefit of a direct competitor, SES.

84.     SES misappropriated Valicor's confidential information by obtaining it from Mr. Wheeler and/or Mrs. Wheeler and using it solely for the benefit of its directly competing business.

85.     Defendants have misappropriated and will continue to misappropriate Valicor's

confidential information to their benefit and to Valicor's detriment through Mr. and Mrs. Wheeler's continued direct and/or indirect employment or involvement with SES.

86.     As a direct and proximate result of Defendants' conduct, Valicor will continue to suffer general and special damages, including loss of customers, substantial loss of business profits and harm to its goodwill.  Defendants will continue to be unjustly enriched.  Valicor seeks compensation for all damages and losses proximately caused by Defendants, in an amount to be proven at trial.  Further, Valicor seeks an injunction restraining Defendants and those acting in concert with them as prayed below.

## COUNT VIII
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE MICHIGAN UNIFORM TRADE SECRETS ACT, MCL § 445.1901, *et seq.*
### (All Defendants)

87.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 86 as fully set herein.

88.     Valicor's confidential customer information, including the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the customer's specific needs, are trade secrets subject to protection under the Michigan Uniform Trade Secrets Act, MCL § 445.1901, *et seq*. ("MUTSA").

89.     Valicor's trade secrets provide independent economic value to Valicor.

90.     Valicor's trade secrets give Valicor a competitive advantage over competitors who do not know Valicor's trade secrets.

91.     As an employee for Valicor, Mr. Wheeler had access to and possessed Valicor's trade secrets, which included the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the

customer's specific needs.

92.     The confidential information is now known to Valicor's competitors or others outside Valicor's own business, including SES and Mrs. Wheeler.

93.     Mr. Wheeler acquired such trade secrets and confidential information in confidence, and Valicor took reasonable steps to safeguard its confidential information, which included executing non-compete and confidentiality agreements with its current and former employees.

94.     Mr. and Mrs. Wheeler, beginning while Mr. Wheeler remained a Valicor employee, willfully and maliciously misappropriated Valicor's confidential information in violation of the MUTSA by disclosing it to third parties without Valicor's consent and using it solely for their benefit and the benefit of a direct competitor, SES.

95.     SES willfully and maliciously misappropriated Valicor's confidential information in violation of the MUTSA by obtaining it from Mr. Wheeler and/or Mrs. Wheeler and using it solely for the benefit of its directly competing business.

96.     Defendants have misappropriated and will continue to misappropriate Valicor's confidential information to their benefit and to Valicor's detriment through Mr. and Mrs. Wheeler's continued direct and/or indirect employment or involvement with SES.

97.     As a direct and proximate result of Defendants' conduct, Valicor will continue to suffer general and special damages, including loss of customers, substantial loss of business profits and harm to its goodwill.  Defendants will continue to be unjustly enriched.  Valicor seeks compensation for all damages and losses proximately caused by Defendants in an amount to be proven at trial, including recovery of its attorneys' fees.  Further, Valicor seeks an injunction

restraining Defendants and those acting in concert with them as prayed below.

## COUNT IX
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE MISSOURI UNIFORM TRADE SECRETS ACT, §§ 417.450 through 417.467 R.S.Mo (2011)
### (All Defendants)

98.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 97 as fully set herein.

99.     Valicor's confidential customer information, including the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the customer's specific needs, are trade secrets subject to protection under the Missouri Uniform Trade Secret Act, §§ 417.450 through 417.467 R.S.Mo. (2011) ("MOUTSA").

100.    Valicor's trade secrets provide independent economic value to Valicor.

101.    Valicor's trade secrets give Valicor a competitive advantage over competitors who do not know Valicor's trade secrets.

102.    As an employee for Valicor, Mr. Wheeler had access to and possessed Valicor's trade secrets, which included the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the customer's specific needs.

103.    The confidential information is now known to Valicor's competitors or others outside Valicor's own business, including SES and Mrs. Wheeler.

104.    Mr. Wheeler acquired such trade secrets and confidential information in confidence, and Valicor took reasonable steps to safeguard its confidential information, which included executing non-compete and confidentiality agreements with its current and former

employees.

105.     Mr. and Mrs. Wheeler, beginning while Mr. Wheeler remained a Valicor employee, willfully and maliciously misappropriated Valicor's confidential information in violation of the MOUTSA by disclosing it to third parties without Valicor's consent and using it solely for their benefit and the benefit of a direct competitor, SES.

106.     SES willfully and maliciously misappropriated Valicor's confidential information in violation of the MOUTSA by obtaining it from Mr. Wheeler and/or Mrs. Wheeler and using it solely for the benefit of its directly competing business.

107.     Defendants have misappropriated and will continue to misappropriate Valicor's confidential information to their benefit and to Valicor's detriment through Mr. and Mrs. Wheeler's continued direct and/or indirect employment or involvement with SES.

108.     As a direct and proximate result of Defendants' conduct, Valicor will continue to suffer general and special damages, including loss of customers, substantial loss of business profits and harm to its goodwill.   Defendants will continue to be unjustly enriched.   Valicor seeks compensation for actual and punitive damages and losses proximately caused by Defendants in an amount to be proven at trial.   Further, Valicor seeks an injunction restraining Defendants and those acting in concert with them as prayed below.

**COUNT X**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF**
**DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1832, 1839**
**(All Defendants)**

109.     Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 108 as fully set herein.

110. Valicor's confidential customer information, including the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the customer's specific needs, are trade secrets subject to protection under the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1839 ("DTSA").

111. Valicor's trade secrets provide independent economic value to Valicor.

112. Valicor's trade secrets give Valicor a competitive advantage over competitors who do not know Valicor's trade secrets.

113. As an employee for Valicor, Mr. Wheeler had access to and possessed Valicor's trade secrets, which included the identity of customers and potential customers, margins, and confidential contract information, including marketing campaigns and pricing tailored to the customer's specific needs.

114. The confidential information is now known to Valicor's competitors or others outside Valicor's own business, including SES and Mrs. Wheeler.

115. Mr. Wheeler acquired such trade secrets and confidential information in confidence, and Valicor took reasonable steps to safeguard its confidential information, which included executing non-compete and confidentiality agreements with its current and former employees.

116. Mr. and Mrs. Wheeler, beginning while Mr. Wheeler remained a Valicor employee, willfully and maliciously misappropriated Valicor's confidential information in violation of the DTSA by disclosing it to third parties without Valicor's consent and using it solely for their benefit and the benefit of a direct competitor, SES.

117. SES willfully and maliciously misappropriated Valicor's confidential information

in violation of the DTSA by obtaining it from Mr. Wheeler and/or Mrs. Wheeler and using it solely for the benefit of its directly competing business.

118.   Defendants have misappropriated and will continue to misappropriate Valicor's confidential information to their benefit and to Valicor's detriment through Mr. and Mrs. Wheeler's continued direct and/or indirect employment or involvement with SES.

119.   As a direct and proximate result of Defendants' conduct, Valicor will continue to suffer general and special damages, including loss of customers, substantial loss of business profits and harm to its goodwill.  Defendants will continue to be unjustly enriched.  Valicor seeks compensation for all damages and losses proximately caused by Defendants in an amount to be proven at trial, including statutory exemplary damages and recovery of its attorneys' fees and costs.  Further, Valicor seeks an injunction restraining Defendants and those acting in concert with them as prayed below.

### COUNT XI
### CIVIL CONSPIRACY
### (All Defendants)

120.   Valicor adopts and herein incorporates by reference the allegations set forth in paragraph 1 through 119 as fully set herein.

121.   Defendants wrongfully conspired with one another with the intent to illegally misappropriate Valicor's confidential information.

122.   Defendants conspired to use Valicor's confidential information for the benefit of SES, a direct competitor of Valicor, and contrary to the terms and provisions of the Agreement.

123.   Defendants' misconduct resulted in the misappropriation of Valicor's confidential information.

124.    Because of Defendants' conspiracy and their tortious acts, Valicor suffered

damages including loss of customers, substantial loss of business profits and harm to its goodwill.

Defendants are jointly and severally liable to Valicor for all of its injuries and damages.  Valicor

seeks compensation for all damages and losses proximately caused by Defendants, in an amount

to be proven at trial.  Further, Valicor seeks an injunction restraining Defendants and those acting

in concert with them as prayed below.

**COUNT XII**
**INJUNCTIVE RELIEF**
**(All Defendants)**

125.    Valicor adopts and herein incorporates by reference the allegations set forth in

paragraph 1 through 124 as fully set herein.

126.    Valicor has suffered and continues to suffer immediate and irreparable injury as a

result of Defendants' conduct set forth herein.

127.    Pursuant to the Agreement, Mr. Wheeler acknowledged that Valicor is entitled to

injunctive relief:

> You agree that the restriction imposed in this Agreement are fair and
> reasonably required to protect the Company's business and
> commercial interests….You understand that any breach, or
> threatened breach, of this Agreement will cause the Company
> irreparable harm which cannot be adequately compensated by an
> award of money damages.  As a result, You agree that, in addition
> to any other remedy the Company may have, the Company may seek
> and obtain injunctive relief restraining You from directly or
> indirectly violating this Agreement or from engaging in any activity
> which compromises the protection afforded to the Company by this
> Agreement without the necessity of posting a bond or other financial
> assurance.
>
> (**Exhibit B**, Para. 6).

128.    The damages that Valicor continues to suffer as a result of Defendants' conduct are

difficult to assess in light of Mr. Wheeler's continued attempts to solicit Valicor customers. As a result, Valicor has no adequate remedy at law.

129.     Pursuant to this Court's equitable jurisdiction, Valicor is entitled to an injunction prohibiting such willful and wrongful conduct, including Defendants' unlawful competition, solicitation of customers and use of Plaintiff's Confidential Information.

130.     Valicor is also entitled to an injunction requiring Defendants to refrain from using and to return all Confidential Information of Valicor.

131.     Valicor has suffered and will suffer irreparable harm resulting from Defendants' unlawful conduct and deliberate and willful violation of the terms of the lawful Agreement Mr. Wheeler executed with Valicor.

132.     In contrast, the injunctive relief sought by Valicor would not harm Defendants. Instead, judgment in favor of Valicor would merely require Mr. Wheeler to abide by contractual terms to which he already consented.

133.     Further, injunctive relief is not contrary to public policy and indeed protects the valid and protectable business interest of a corporation doing business in Missouri.

134.     Further, enforcement of the Agreement is in the public interest because it encourages performance of legal obligations by parties to a valid and binding contract.

WHEREFORE, Plaintiff prays for judgment on all Counts of this Complaint against Defendants and for this Court to:

(a)  Enjoin and restrain Defendants from (i) engaging in any services that Valicor also engages in within the pertinent geographic area set forth in the Agreement; (ii) competing in any way with Valicor; (iii) soliciting any of Valicor's clients

24

or other business contacts which Mr. Wheeler learned during his period of employment with Valicor; (iv) using any confidential information to which Mr. Wheeler became aware during his employment with Valicor; and (v) extending the contractual period of non-competition an additional eighteen months to account for Mr. Wheeler's ongoing breach;

(b)   Award Valicor actual and punitive damages, including statutory exemplary damages, due to the damages incurred by Valicor because of Defendants' conduct in violation of the Agreement;

(c)   Order Defendants to pay Valicor's attorneys' fees, costs and expenses incurred herein; and

(d)   Award Valicor all other relief as is just and appropriate, including such other injunctive relief as the Court may deem just and appropriate.

Date: August 6, 2019          By:    BERKOWITZ OLIVER LLP

/s/ Timothy D. Wallner
Timothy D. Wallner   #59867
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:    (816) 561-7007
Facsimile:    (816) 561-1888
Email: twallner@berkowitzoliver.com

Matthew O. Gatewood (*pro hac vice forthcoming*)
Eversheds Sutherland (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC 20001
MatthewGatewood@eversheds-sutherland.com

*Attorney for Plaintiff Valicor Environmental Services, LLC*